Scottish Security Co.'s Receiver v. Starks.

———————

CASE 71—ACTION BY W. T. NEWMAN, JR., AS RECEIVER OF THE SCOT-
TISH SECURITY CO. AGAINST JOHN P. STARKS FOR UNPAID SUB-
SCRIPTION TO THE CAPITAL STOCK OF SAID COMPANY.—FEB. 11.

# Scottish Security Co.'s Receiver v. Starks.

117   609
125   413

117   609
f136   328

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

CORPORATION—SUBSCRIPTION FOR STOCK—RELEASE—WHAT LAW GOV-
ERNS—VARYING WRITTEN AGREEMENT BY PAROL.

Held: 1. Where one subscribed for stock merely to enable the other subscribers to incorporate, and after such incorporation he was released from the subscription by the unanimous consent of the other subscribers, and while the corporation had no outstanding debts, the release is valid, and subsequent creditors can not complain.

Vol. 117—39

610 KENTUCKY REPORTS. [Vol. 117

Scottish Security Co.'s Receiver v. Starks.

2. The validity of the cancellation of a subscription to the stock of a corporation whose chief office is in the State is governed by the law of the State, though the incorporation was under the laws of another State.

3. It is immaterial whether a release of all liability under a written subscription for stock was in parol or otherwise.

BINGHAM & DAVIS, AND W. W. THUM, ATTORNEYS FOR APPELLANT.

## POINTS.

1. Starks was unquestionably, in law and in fact, a stockholder in the company. This is shown by his own admission in evidenc that he was a signer of the articles of incorporation. This is shown by the minute book of the directors and stockholders, wherein he appears as an incorporator, subscribing for stock as a stockholder, signing the waiver of notice for the purpose of calling the organization meeting and as a stockholder signing a proxy authorizing Mr. Guthrie to act for him in the meeting of stockholders. This is also shown by the fact that on January 30, 1900, according to the minute book, he signed his resignation as a director in the company. This is shown further by the construction of the law of West Virginia and the by-laws of the company, according to the minute book, which makes every person a stockholder whose name stands on the books as such. The entire evidence establishes the fact that Starks was a stockholder.

2. The laws of West Virginia govern and control the relations of Starks as a stockholder, and they are to be considered in determining his liability as such.

3. The receiver had the right, under our laws, to bring and maintain the action.

4. The demurrer of the receiver to the answer of Starks to the petition should have been sustained, and it was error to overrule said demurrer, because the answer of Starks admits that he signed the articles of incorporation, and consequently became a stockholder, but seeks to avoid liability as a stockholder by setting up the fact that he had a secret and fraudulent verbal understanding with the rest of the incorporators that he was only a sham incorporator and was not at any time to be held as, or considered as a real incorporator or stockholder. In other words, the answer of Starks sets up his own fraud and the fraud of the other incorporators in securing a charter from the secretary of State of West Virginia under the laws of West

Virginia. Starks pleads his own fraud and the fraud of his com-
panions, and should be estopped in attempting to make such
a plea. The answer is also bad because it alleges the trans-
fer of his stock by Starks, and fails to show that such trans-
fer conformed to the law of West Virginia or the by-laws of
the company. It pleads a parol agreement to change a written
contract.

5. The court below committed an error which was damaging
to the cause of the receiver in sustaining the demurrer to the
second paragraph of the receiver's reply, because that second
paragraph alleged matters of greatest importance in establish-
ing the liability of Starks under the law. Said second para-
graph of the reply sets up that Starks always held himself out
to be a stockholder in the company and that the debts of the
company were created upon the strength of that fact, and that
Starks was aware at all times of that fact.

6. The receiver should have been granted a peremptory in-
struction to the jury to find a verdict for him against Starks
at the close of the evidence in the case. This is true because
the court instructed the jury that Starks, in signing the ar-
ticles of incorporation, became a subscriber to stock and the
jury should so find unless it appeared that after the company
was incorporated all the persons then holding stock consent-
ed that Starks should not be held upon his subscription, and be-
cause there is a total failure of evidence anywhere to show
that all of such persons holding stock did consent or agree to
release Starks, and the evidence upon this point is absolutely
indisputable and undisputed.

7. The court should have given the first instruction asked for
by counsel for the receiver, because it places before the jury the
consideration of the transfer of stock by Starks before and
after the insolvency of the corporation, and his liability in such
cases under the law of West Virginia where the company was
incorporated. The court should also have given the second in-
struction asked for by the receiver because it places before the
jury the consideration of whether or not Starks transferred
his stock according to the by-laws of the company. The court
should have given the third instruction asked for by the re-
ceiver because it places before the jury the question of whether
or not there was a consideration for the release of Starks as
a stockholder, and whether or not there was fraud underlying
such release. The court should have given the fourth instruc-
tion asked for by the receiver, because it presents the question
of a consideration for the release of Starks as a stockholder,
and the question of fraud underlying or effecting that con-

sideration. The court should have given the fifth instruction asked for by the receiver because it presents the question of whether or not the transfer by Starks of his stock was in accordance with the by-laws of the company and the laws of West Virginia, and was consented to by the unanimous vote of the stockholders under the laws of West Virginia and the company. The court should have given the sixth instruction asked for by the receiver because the jury is therein directed to find. whether or not the law of West Virginia, introduced in evidence, had been followed in transferring the stock.

8. The court should have allowed the filing of the receiver's amended reply because that pleading sets up the law of West Virginia with respect to stockholders and corporations, and specially with respect to the liability of Starks as a stockholder in the company. The pleading should have been filed because also it set up, in rebuttal of the affirmative matter in the answer of Sparks, the lack of power in the incorporators to agree to release or to release Starks from his subscription. It should have been filed because, furthermore, it sets up the law of West Virginia as to the requirements to be observed in case of such a transfer as Starks relies upon.

9. There was serious error in allowing as evidence the many questions and answers contained in the depositions of Edward Carder, because they are seriously and harmfully irrelevant and incompetent.

10. The court should have given the entire law in its instructions to the jury, whereas, it only gave a part of the law which governed the case, and left out of consideration that part of the law of West Virginia which ought to govern the liability of a stockholder in a West Virginia corporation.

11. It was serious error in the court to permit Starks, Young and Wilson to testify to various conversations with various parties about matters of a hearsay nature and totally irrelevant.

12. The evidence overwhelmingly establishes the liability of Starks as a stockholder, and this is true both of the evidence for the receiver and the evidence. for Starks, and it is true even under the erroneous proceedings of the court and under the partial statment of the law given by the court to the jury.

### AUTHORITIES.

Point 1. Code of West Virginia, Corp. Laws of W. Va., p. 11.
Point 2. Cook on Corporations (1898), vol. 1, sec. 223.
Point. 3. Section 84, Kentucky Statutes.
Point 4. Code of West Virginia, 54:8 (Corp. L. of W. Va.,

Scottish Security Co.'s Receiver v. Starks.

p. 23); Code of W. Va., 54:8 (Corp. L. of W. Va., p. 24);
Code of W. Va., 53:22 (Corp. L. of W. Va., p. 12); Code of
W. Va., 53:29 (Corp. L. of W. Va., p. 13); Code of W. Va.,
53:41 (Corp. L. of Va., p. 16); Constitution of W. Va., 11:2
(Corp. L. of W. Va., p. 1); Bigelow on Frauds (1877), p.
153; Bigelow on Frauds (1877), 154; A. & E. Ency of L. (2d
ed), vol. 14, p. 78; Cook on Corp., (1898), vol. 1, sec. 169;
Cook on Corp., (1898), vol. 1, sec. 52; Cook on Corp. (1898),
vol. 2, sec. 625; Bedford R. R. v. Bowser, 48 Pa. St., 29; La-
fayette, &c. Corp. v. Ryland, 80 Wis., 29; Rider v. Morrison, 59
Md., 429; Hughes v. Antietam Mfg. Co., 34 Md., 316; Ryder
v. Alton R. R., 13 Ill., 516; Tuckerman v. Brown 33 N. Y., 297;
Cook on Corp. (1898), vol. 1, sec. 54; Cook on Corp. (1898),
vol. 1, sec. 79; Boyd v. Ry., 90 Pa. St., 169; Caley v. Ry., 80
Pa. St., 363; Cook on Corp. (1898), vol. 1, p. 216, note 1; Cook
on Corp. (1898), vol. 1, sec. 81; Cook on Corporations (1898),
vol. 1, sec. 137; Thomas v. Lake, 19 Nev., 103; Kentucky Stat-
utes, sec. 545.


A. J. CARROLL, ATTORNEY FOR APPELLEE.


POINTS AND AUTHORITIES.


1. The subscription for stock in the Scottish Security Com-
pany by the appellee was cancelled by and with the unanimous
consent of all the stockholders before the company had con-
tracted any indebtedness.

2. It is within the power of all parties to a contract to re-
scind or change it at any time, and a contract of subscription
for stock in a corporation does not stand upon a different footing.
Before debts have been created all the stockholders can cancel
a subscription. Gathright v. Oil City Land Co. &c., 21 Ky. Law
Rep., 1657; Cook on Corp., vol. 1, sec. 169.

3. The company was estopped from bringing an action to
enforce the appellees' alleged subscriptions, and the receiver for
the corporation could not maintain it, as section 84 of the Ken-
tucky Statutes does not apply to the transactions involved.
Ray, Receiver v. First National Bank, 23 Ky. Law Rep., 717;
Kentucky Statutes, sec. 84.

4. The instruction given by the trial judge embraced in con-
cise and simple language every question necessary to be submit-
ted to the jury, and the verdict was fully sustained by the
evidence and should not be disturbed.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

The appellant, W. T. Newman, Jr., as receiver of a Scottish Security Company, sued the appellee, John P. Starks, in the lower court, upon an alleged unpaid subscription for twenty shares of the capital stock of the company named, the amount claimed being $1,800. The trial was by jury, and a verdict was found for the defendant, upon which judgment was entered dismissing the petition and allowing appellee his costs. The appellant's motion for a new trial was overruled, and the case is here by appeal.

The defense interposed by the answer was in substance that the appellee was never in fact a subscriber to the capital stock of the Scottish Security Company, although his signature appeared to its articles of incorporation as a holder of twenty shares of its stock, but that the only purpose of his appearing, as distinctly understood between himself and the incorporators, who were then the only stockholders, was to enable the company to become incorporated under the laws of West Virginia, and to effect an organization; and, further, that no stock was ever issued to or paid for by him, nor was it so intended, and that he had no connection with the officers or business of the company after its organization, and was, by consent of all the stockholders, released from his subscription to the capital stock of the company. The matters of defense averred in the answer were denied by reply.

The facts presented by the record appear to be as follows: D. H. Wilson, W. C. Cowper, Alex Stewart, and Nathan Wolf, desiring to organize the Scottish Security Company, requested the appellee to join with them in the enterprise, which he at first seemed willing to do, but later he attended a meeting held by them, at which he informed them that

upon full consideration of the matter he had made up his mind not to take stock in the company, or part in its organization, but, in view of the representations of the persons named that the articles of incorporation had been already prepared containing his name as one of the incorporators, appellee was induced to sign the paper that it might be forwarded to West Virginia, and the incorporation effected under the laws of that State, without delay; but this act upon his part was with the distinct understanding and agreement that he did not thereby become a stockholder in the company, or liable for the stock, or any part thereof, set opposite his name, and in fact that he was then released from its payment. As stated, the real parties in interest were D. H. Wilson, W. C. Cowper, Alex.Stewart and Nathan Wolf. The names of Stewart and Wolf do not, however, appear in the articles of incorporation, for the reason that under the laws of West Virginia it was necessary that two of the incorporators be residents of that State; therefore the names of Edward Carder and D. S. Guthrie, residents of that State, and clerks in the office of its Secretary of State, were put in the articles of incorporation with those of Wilson, Cowper, and Starks, in the place of Alex Stewart and Nathan Wolf, each of the incorporators being represented in the articles of incorporation as having taken twenty shares of stock.   Upon being incorporated, the company was organized at a meeting held in Charleston, W. Va., at which meeting appellee, to effect the organization of the company, was elected a member of its board of directors.   He was not at that meeting, but gave his proxy to another to represent him.   The chief office of the company was to be and was kept in Louisville, Ky., and at the first meeting there held the appellee was present and tendered his written resigna-

tion as a director of the company, according to the previous understanding and agreement, though the resignation does not seem to have been formally acted on until the following meeting, when it was duly accepted. In the meantime Carder and Guthrie had, at the meeting in West Virginia, transferred to Stewart and Wolf the stock set opposite their names in the articles of incorporation, and the stock over against the name of appellee in that instrument was never issued to him, but was divided among and issued to Wilson, Cowper, Stewart, and Wolf, as they had agreed with appellee should be done, and they paid to the company ten per cent. of the face value thereof, viz., $200. Later, one share each was issued to Stewart's wife and a relative of Wolf. But at the time appellee signed the articles of incorporation the only real stockholders of the company were Wilson, Cowper, Stewart, and Wolf, the stock of the latter two having been subscribed in the names of Carder and Guthrie, and the same persons were in fact the only stockholders of the company when the release of appellee, if he ever was a stockholder, was consummated, when the twenty shares of stock supposed to have been subscribed by him were divided among the other stockholders named. It was never contemplated by the parties that any of the stock should be issued to or paid for by appellee. It also appears that, at the time of the distribution among the real stockholders of the twenty shares that had been placed opposite his name in the articles of incorporation, the company had not done any business beyond effecting an organization, nor had it contracted any debts.

Upon the facts thus presented the question arises, was the release of the appellee from the payment of the twenty shares of stock legal? Or, in other words, is he liable for

the twenty shares of stock, or any part thereof?   There can be no question under the evidence but that all the stock-holders of the company consented to the cancellation of the appellee's subscription, and had the twenty shares of stock intended for him issued to themselves.   In 1 Cook on Cor-porations, section 169. it is said:   "A subscriber for stock in a corporation can not   obtain a cancellation of his sub-scription except by the unanimous consent of the other sub-scribers.   Even a majority of the stockholders can not with-draw and refuse to proceed. These rules are just, and based upon a sound public policy.  By unanimous consent of the stock holders a subscription may be canceled, and a subsequent creditor of the corporation can not complain."   The doctrine *supra* seems to be recognized in Gathright, etc. v. Oil City Land Co.'s Receiver (21 R., 1657), 56 S. W., 163, though the facts in that case were unlike those of the case at bar.

  The lower court gave but one instruction in this case, which was as follows:   "The court instructs the jury that when the defendant, John P. Starks, signed the articles of in-corporation of the Scottish Security Company, he became a subscriber for twenty shares of the capital stock of said company, and they should find for the plaintiff in the sum of $1,800, with interest from the 12th day of November, 1901, unless they shall believe from the evidence that after the said company was incorporated all of the persons then holding or owning stock in said company agreed or consented that the defendant should not be held upon his said sub-scription, and that the twenty shares of stock subscribed for by him was by reason of the said agreement or consent, if such there was, issued to other persons, and that the com-pany did not then have any outstanding debts.  If such is the fact, then they should find for the defendant."  We think this instruction submitted to the jury in explicit terms the

only question of fact necessary to be decided by them, consequently no other instructions were necessary.

The fact that the cancellation of appellee's subscription was not effected according to the laws of West Virginia is, in our opinion, entitled to no weight. The chief office of the company seemed to be in Louisville, this State; at any rate, the meetings of its board of directors, with one exception were held in that city, and, if the release of the appellee was effected according to the laws of this State, we think it legal and binding.

The case here is not one in which, the appellee is seeking to avoid the execution of a contract by relying upon a contemporaneous parol agreement contradictory of a writing, but he is relying upon the fact that the contract was executed and his release effected, whereby all liability under the contract, if any existed, was discharged. It seems to us therefore, to be immaterial whether the agreement resulted in his release was in parol or otherwise. The fact remains that the release resulted, and that the company by reason thereof issued to others stock which, but for the release, appellee would have been entitled to. How can appellant compel the payment by appellee of the subscription to its capital stock when it is not in his power to issue to him the certificate of stock to which he would have been entitled in the event of such payment? ·

Being of the opinion that the· record discloses no error that is prejudicial to the rights of the appellant, the judgment is affirmed.