DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 9626. Department One. January 24, 1912.]

UNION TRUST COMPANY, *Trustee etc., Appellant,* v.
BENJAMIN E. AMERY, *Respondent.*[1]

LIMITATION OF ACTIONS—RELIEF ON GROUND OF FRAUD—CORPORA-
TIONS—REDUCTION OF CAPITAL STOCK. An action by a trustee in
bankruptcy to recover the sum paid to the bankrupt's president on
a sale of its capital stock, thereby diminishing the capital stock of
the corporation, is one for. relief upon the ground of fraud, and is
not barred until the lapse of three years after the cause of action
accrues, as provided in Rem. & Bal. Code, § 159, subd. 4; in view
of Id. §§ 3697, and 3704-3706, making it unlawful to make a dividend
or reduce the capital stock of a corporation except in the manner
provided.

BANKRUPTCY—TRANSFERS — ACTION BY TRUSTEE — CORPORATIONS—
CAPITAL STOCK—UNLAWFUL REDUCTION — FRAUD — SUBSEQUENT CRED-
ITORS. Where a corporation, before bankruptcy, unlawfully reduced
its capital stock by purchasing the stock of its president, the trustee
in bankruptcy may maintain an action to recover the money paid
without alleging the existence of creditors at the time of the un-
lawful sale; since subsequent creditors are equally entitled to redress.

BANKRUPTCY—FRAUDULENT TRANSACTIONS — ACTION BY TRUSTEE—
STATUTES. The bankruptcy act does not require that creditors
should first acquire a lien before the trustee can sue to set aside
an unlawful transaction in fraud of the rights of creditors.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered November 9, 1910, upon

[1]Reported in 120 Pac. 539.

sustaining a demurrer to the complaint, dismissing an action for money received. Reversed.

*Campbell & Goodwin,* for appellant.

*H. M. Stephens,* for respondent.

GOSE, J.—Plaintiff, a trustee in bankruptcy for the estate of Syphers Machinery Company, a corporation, brought this action to recover from the defendant a sum of money paid to him by the bankrupt corporation, for 5,500 shares of its capital stock, purchased from him by the corporation prior to the time it was adjudged a bankrupt. A demurrer to the complaint was sustained, and a judgment of dismissal entered. The plaintiff has appealed.

The complaint, in substance, avers that the Syphers Machinery Company, a Washington corporation, was adjudged a bankrupt in the United States district court, Eastern District of Washington, Eastern Division, on the 6th day of May, 1909; that the appellant, a corporation, was elected as its trustee in bankruptcy on the 3d day of June, 1909, and has duly qualified as such; that the appellant as such trustee was, on the 29th day of November, 1909, granted permission by the referee in bankruptcy to prosecute this suit; that on the 18th day of October, 1906, the bankrupt corporation, in pursuance of an oral agreement, purchased from the respondent, who was then its president and one of its trustees, 5,500 shares of its capital stock, of the par value of one dollar per share, and paid him therefor from the funds of the corporation the sum of $5,500, and that the capital stock of the corporation consisted of 25,000 shares of stock, of the par value of one dollar per share. It is further alleged:

"That the sale by the said Benjamin E. Amery, otherwise known as B. E. Amery, of the said 5,500 shares of capital stock, to the said Syphers Machinery Company, a corporation, was prejudicial to the creditors of the corporation, in that the creditors have not been paid and the trustee in bank-

ruptcy, the Union Trust Company of Spokane, has now no funds in its hands with which to pay the debts of the said Syphers Machinery Company, the bankrupt corporation; that the said Syphers Machinery Company, by the sale of the said 5,500 shares of its capital stock, as aforesaid to the said Benjamin E. Amery, otherwise known as B. E. Amery, attempted to reduce and reduced its capital, contrary to law."

The first question presented for our consideration is whether the action is barred by the statute. A reference to the dates stated will disclose that three years had not elapsed between the purchase and sale of the stock and the adjudication of bankruptcy. We think the case falls within the provisions of Rem. & Bal. Code, § 159, subd. 4, which is as follows:

"Within three years,—

"An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

Rem. & Bal. Code, § 3697, provides that it shall be unlawful for the trustees of a corporation "to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock of the company," except as provided by the statute. Rem. & Bal. Code, §§ 3704, 3705, and 3706, make specific provisions for the manner of diminishing the capital stock of a corporation, and expressly require that if the capital stock be diminished, it be made to appear upon the public records in the same manner as is provided for the filing of the original articles of incorporation. The obvious purpose of the statute is to make the public records show the amount of the capital stock of a corporation; in other words, to speak the truth. It follows, therefore, that, where the capital stock has not been diminished in compliance with the statute, the

original articles of incorporation operate as a continuing representation on behalf of the corporation that its capital stock is unimpaired, and that the impairment of its capital stock in any other manner is a fraud upon its creditors, both as to the corporation and all others who participate in or profit by such an act. *Tait v. Pigott*, 32 Wash. 344, 73 Pac. 364; *Id.*, 38 Wash. 59, 80 Pac. 172; *Hall & Farley v. Henderson*, 126 Ala. 449, 28 South. 531, 85 Am. St. 53, 61 L. R. A. 621; *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn. 174, 50 N. W. 1117. As to whether the cause of action accrues and the statute commences to run when the stock is sold, or when insolvency takes place, we need not decide, as three years had not elapsed between the date of the sale and the adjudication of bankruptcy.

The respondent contends that, as the complaint does not allege that there were any creditors when the delict occurred, a cause of action is not stated. The Federal bankruptcy law provides that the trustee of the estate of the bankrupt, upon his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt; that he may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value from the person to whom it was transferred, saving the rights of a *bona fide* holder for value, and that suit shall not be brought by the trustee subsequent to two years after the estate has been closed. 1 Fed. Stats. Ann. p. 565, subd. d.; p. 697, § 70, and p. 702, subd. e. This question was settled adversely to respondent's contention in the *Tait* case in 38 Wash., *supra*. In that case, which was a suit by a receiver of an insolvent corporation, it was contended that the court erred in striking the second affirmative defense, which was in substance that those who were creditors of the corporation when it purchased and attempted to retire a part of its capital stock waived their

right to object. In discussing this question, at page 163, it is said:

"It does not appear that subsequent creditors had waived their rights to all the assets of the corporation, even conceding—which we do not now decide—that, under the allegations of the answer, the creditors then existing had so waived their rights."

In *Hospes v. Northwestern Mfg. & Car Co.*, *supra*, a creditor's suit against certain stockholders of the corporation who held bonus stock, the court had under consideration the question of the liability of such stockholders to creditors of the corporation who became such after the stock had been issued. In considering this question, at page 198, it is said:

"The misrepresentation as to the amount of capital would operate as a fraud on such a creditor as fully and effectually as if he had personal knowledge of the existence of the defendants' stock, and believed it to have been paid for when he gave the credit. For this reason, among others, we think that all that it is necessary to allege or prove in that regard is that the plaintiff is a subsequent creditor; . . ."

Respondent has cited cases growing out of the construction of the sales in bulk statute in this state, and the conditional sales statute in other states. *Hardwick v. Gettier*, 48 Wash. 644, 86 Pac. 943, falls within the first class, and *Crucible Steel Co. v. Holt*, 174 Fed. 127, and *York Mfg. Co. v. Cassell*, 201 U. S. 344, fall within the second class. In the *Hardwick* case we held that the sales in bulk statute, considering the purpose of its enactment, applies only to creditors existing at the time of the sale. The Federal cases are based upon the construction given to the statutes of the state under which the respective rights were asserted by the state courts. It is apparent that these cases are not in point. *Sligh v. Shelton Southwestern R. Co.*, 20 Wash. 16, 54 Pac. 763, is more difficult to distinguish. It was, however, based upon essentially different facts from those involved in this case. If not distinguishable upon the facts, it is overruled by the later case of *Tait v. Pigott*. If the re-

spondent's contention that creditors who became such after the stock has been purchased and retired by the corporation have no redress were to be sustained, the practical result would be that as soon as a corporation was organized and before it had incurred any indebtedness, it could purchase from each of its stockholders one-half or more of his stock, retire the stock, deplete the treasury, and then proceed to make debts and defraud creditors who had a right to rely upon the public records as to the amount of the capital stock, and to extend credit to the corporation upon the faith that it had not impaired its capital by any such unlawful means. We cannot stand sponsor for a view which would lead to such mischievous ends.

Finally, it is contended that, "in order that a creditor may be able to set aside a transaction claimed to be unlawful, the creditor would have to have a judgment or an attachment or lien of some kind." If this court has so held, the case is not cited; and the bankruptcy statute does not so provide. The cases cited under this head are to the effect that, when a lien has attached to any property of the bankrupt before the adjudication of bankruptcy, and which is not in fraud of the bankruptcy law or the rights of general creditors, the trustee takes title to the property subject to the lien.

We do not think that § 67, subd. e. of the bankruptcy act, vol. 1, Fed. Stats. Ann., p. 692, which makes void all conveyances of property made by the bankrupt within four months prior to the filing of the petition in bankruptcy with intent to defraud creditors, applies to the case at bar. We think the complaint states a cause of action. The judgment is therefore reversed.

Dunbar, C. J., Fullerton, Parker, and Mount, JJ., concur.