[No. 12481.   Department One.   April 29, 1915.]

E. L. BRENAMAN, *Receiver etc., Respondent*, v.
M. H. WHITEHOUSE *et al., Appellants.*[1]

CORPORATIONS—CAPITAL STOCK—REDUCTION—DIVIDENDS—VALIDITY. A transaction whereby the stock of a corporation was sold and issued for cash, and the entire sum received was disbursed by the corporation as a dividend and paid to shareholders, is prohibited by Rem. & Bal. Code, § 3697, making it unlawful for the trustees to make any dividend except from the net profits, or to divide, withdraw, or pay to stockholders any part of the capital stock or to reduce the same, except in the manner required by the act.

SAME—CAPITAL STOCK—TRUST FUND—REDUCTION—SOLVENCY. The capital stock of a corporation being a trust fund for the payment of its debts, upon the faith of which the law presumes credit is given, a dividend reducing the amount of the capital stock is unlawful regardless of the solvency of the corporation at the time of the transaction.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered May 1, 1914, upon findings in favor of the plaintiff, in an action by a receiver to recover the amount of a dividend received by stockholders of a corporation.   Affirmed.

*Oscar Cain*, for appellants.

*Barker & Barker*, for respondent.

[1]Reported in 148 Pac. 24.

Holcomb, J.—During the month of September, 1910, the appellants were stockholders in, and members of the board of trustees of, the McDermid-Salnave Engraving Company. Prior thereto, the corporation had sold certain of its stock to the Shaw-Borden Company and other persons, which stock had been paid for in cash. It was agreed between the McDermid-Salnave Company and the various persons above referred to that the McDermid-Salnave Company might do certain work for them in its line of business, to be paid for, fifty per cent in cash and fifty per cent in the stock of the McDermid-Salnave Company, which had been issued to them. At the annual meeting of the trustees of the corporation on September 17, 1910, among other proceedings, it was ordered and directed that the corporation sell 105 shares of its capital stock for $15 per share, and a dividend was declared of the full amount so realized from such sale. The appellants were present at the meeting and participated therein, and neither of them dissented from such action. On September 19 following this meeting, and in accordance with the action of the trustees, 104 or 105 shares of the capital stock of the corporation were sold and issued to one Leonard, for $1,560. This sum was paid by Leonard to the corporation, and on the same day, the entire sum of $1,560 so received was disbursed by the corporation as a dividend to the appellants and to F. G. McDermid and other shareholders, in equal amounts of $520 each. There were other stockholders of the corporation at the time, but they seem not to have been participants in so far as this dividend was concerned. Subsequently the name of the corporation was changed to McDermid Engraving Company. On January 5, 1913, in an action brought by one of these appellants, M. H. Whitehouse, a receiver was duly and regularly appointed for the company, and respondent was appointed and qualified and has ever since acted as such receiver. This action is brought by the receiver, under the order of the court, to recover the amount

of the dividend of $1,560, with interest and costs, demand for its repayment having been made and refused.

The appellants considered that that part of the fifty per cent of the stock sold to Shaw-Borden Company and others which was to be paid in stock, represented a net profit upon the work, and that approximately $1,000 thereof having been earned, the board of directors were justified in treating all of it as having been earned, and declaring a dividend in that amount. The capital stock of the McDermid Engraving Company, both before and after its change of name, was $5,000, divided into 500 shares of $10 each. The trial court held the declaration of dividend void, and entered judgment for the respondent.

The action was based on Rem. & Bal. Code, § 3697, which provides as follows:

"It shall not be lawful for the trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock of the company unless in the manner prescribed in this chapter, or the articles of incorporation or by-laws; and in case of any violation of the provisions of this section, the trustees under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the board of directors at the time, or were not present when the same did happen, shall, in their individual or private capacities, be jointly or severally liable to the corporation, and the creditors thereof in the event of its dissolution, to the full amount so divided, or reduced, or paid out: Provided, that this section shall not be construed to prevent division and distribution of the capital stock of the company, which shall remain after the payment of all its debts upon the dissolution of the corporation or the expiration of its charter."

It is undoubtedly true, as appellants say, that "the purpose of such statutes is to enable inquiring creditors to look to the public record as to the amount of the capital stock of

a corporation, and to extend credit upon the faith that it has not impaired its capital by any unlawful means;" citing Thompson on Corporations, §§ 1146-1147; and *Union Trust Co. v. Amery*, 67 Wash. 1, 120 Pac. 539. But a transaction on the part of a stock company whereby it retires its own stock, adding nothing of permanent value as assets in the place of it, certainly falls within the prohibition of the statute. The effect of the transactions in this stock was that, whereas the stock should have been outstanding and its value in the treasury or in the assets of the company, it was not outstanding, but was in the treasury of the company, and its proceeds were divided among the three stockholders as dividends.

Beginning with *Tait v. Pigott*, 32 Wash. 344, 73 Pac. 364, reaffirmed on the second appeal of that case in 38 Wash. 59, 80 Pac. 172, down to *Kom v. Cody Detective Agency*, 76 Wash. 540, 136 Pac. 1155, this court has consistently held, that a corporation in this state cannot traffic in its own stock; that the capital stock of the corporation is a trust fund for the payment of its debts, upon the faith of which the law presumes credit was given, unless other security was taken at the time by the creditor; and that it is immaterial, since the thing which was unlawfully taken reduced the available resources of a now insolvent company, that the company was solvent at the time the transaction occurred. Appellants seem to think that the case of *Northern Bank & Trust Co. v. Day*, 83 Wash. 296, 145 Pac. 182, arrives at a different result. But that was a case where the capital stock of the corporation was increased to represent the net accrued profits to stockholders, and there was no reduction and extinction of any of the capital stock.

Appellants contend that "the evidence in this case shows that there was no time between the declaration of a dividend and the incurring of an indebtedness of any of the creditors represented by this receiver when the assets of the corporation were below $5,000." As before shown, this is immaterial.

However, it was shown that it was in debt to one of the appellants in a substantial sum, and that the indebtedness was not paid. In the *Kom* case, *supra,* it was admitted that the company, at the time of the transaction and at the time of the action, was solvent and had no creditors, and urged that, therefore, the statute could have no bearing on the case. This court held to the contrary, saying, per Chadwick, J.:

"The statute contemplates transactions that may arise in faith of the capital stock, and is broad enough to protect future creditors and also stockholders who are not parties to a prohibited contract."

This case is manifestly ruled by a long line of our own decisions. There is nothing therein to distinguish it in order to adopt the rule contended for by appellants. See *Tait v. Pigott,* and *Union Trust Co. v. Amery, supra; Jorguson v. Apex Gold Mines Co.,* 74 Wash. 243, 133 Pac. 465, 46 L. R. A. (N. S.) 637; *Barnard Mfg. Co. v. Ralston Milling Co.,* 71 Wash. 659, 129 Pac. 389; *Kom v. Cody Detective Agency, supra,* and many other cases therein cited.

There being no other question to determine, the judgment was right, and is affirmed.

MORRIS, C. J., PARKER, MOUNT, and CHADWICK, JJ., concur.