## LEFKER *v.* HARNER.

## Opinion delivered May 8, 1916.

1. CORPORATIONS—PURCHASE OF OWN CAPITAL STOCK—TRUST COMPANY.— A trust company is without authority to purchase its own shares with its own capital stock.

2. CORPORATIONS—USE OF CAPITAL STOCK.—The capital stock of a corporation is a trust fund that must be devoted to its debts, and neither the corporation nor an individual stockholder can divert it directly or indirectly from that purpose.

3. CORPORATIONS—CAPITAL STOCK OF TRUST COMPANY.—The capital stock of a trust company is a fund that must be procured for the benefit of all creditors.

4. CORPORATIONS—REDUCTION OF CAPITAL STOCK—ACT OF SHAREHOLDER— LIABILITY TO CREDITOR.—Where a shareholder of a corporation enters into a transaction with the officers of the corporation by which the capital stock of the corporation is reduced below the minimum required by the law, his act is a legal fraud upon the creditors of the corporation, and he is liable to the extent of the amount that he has received in return for the shares of stock sold to the corporation and paid for out of its capital stock.

Appeal from Washington Chancery Court; *T. H. Humphreys*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellee instituted this suit against appellant, alleging that on June 20, 1911, appellant and others organized a corporation under the name of Ozark Trust Company, (having a paid-up capital stock, according to

its articles of association, of $50,000 divided into five hundred shares of the value of $100 each, of which appellant owned 239 shares), for the purpose of engaging in the business of a trust company, as provided by chapter 31, subdivision V, sections 887 to 891, inclusive, of Kirby's Digest; that the corporation so formed had its office and principal place of business in the City of Siloam Springs, where it solicited and received from the general public deposits of money in trust, subject to check or sight draft or order of depositors; that in August, 1911, appellant sold all his stock to the corporation in which he was a stockholder, transferring his certificates of stock to the corporation and endorsing on the certificates of stock that same were transferred to the corporation for value received; that such corporation paid to appellant for his stock an amount of money which appellee alleges amounted to not less than $20,000; the exact amount she was unable to state; that neither at the time of this transaction nor at any other time before or after did the corporation have any surplus above its original capital, and that the money which was paid to appellant therefore came out of and depleted its capital stock; that by such purchase of stock from appellant the capital stock of the corporation was reduced to less than $30,000; that such depletion of the capital stock of the corporation resulted in its failure; that no certificates of the transfer of stock from appellant to the corporation was deposited with the clerk of Benton County, and there was no record of such transaction, and therefore no notice to the public; that no steps were taken as provided by section 860 of Kirby's Digest to reduce the capital stock of the corporation; that appellee, in September, 1911, deposited with the corporation the sum of $800; that some months thereafter the corporation became insolvent, paid over all its assets to its numerous creditors and ceased to do business; that appellee had been unable to reduce her claim to judgment against the corporation, and if she had been able to do so such course would be expensive and fruitless; that appellee believed at the time she made the de-

posit that the corporation was solvent and operating in full compliance with the law; that she had no knowledge to the contrary until its failure, and no knowledge of the sale of the stock of appellant to the corporation until some time during the year 1914; that appellant, after the sale of his stock to the corporation as above set forth, left the State and remained away for more than three years, his whereabouts during said period being unknown to the plaintiff, and that she exerciesd due diligence to locate him and was unable to do so; that the appellant and the corporation concealed from the appellee the fact that appellant had sold his stock to the corporation, as above alleged, and that hence appellee hitherto had been prevented from commencing any suit against him; that the sum of $500 of the amount deposited had never been paid to appellee. Wherefore she prayed judgment against the appellant in that sum.

The appellant demurred to the complaint. The court overruled the demurrer, and appellant, electing to stand upon his demurrer, the record recites as follows: "Whereupon the cause was submitted to the court and the court having heard the evidence and being fully advised in the premises, finds that the allegations of the bill are true, and that the plaintiff should have and recover of and from the defendant the sum of $500, with interest, making a total sum of $620." Appellant duly prosecutes this appeal.

*A. L. Smith,* for appellant.

The complaint stated no cause of action. (1) It does not allege insolvency at the time of, or that the corporation was rendered insolvent by the purchase of the stock. (2) No bad faith or fraud is alleged. The corporation was authorized to buy and sell stocks, etc. The purchase of its own stock was not forbidden. No intent to defraud creditors was shown. Appellant was not liable under the allegations of the complaint and proof. 1 Cook on Corp. (8 ed.), § § 311, 313; 75 Ark. 148; 77 *Id.* 12; 80 Ia. 380; 45 N. W. 1037; 11 Ariz. 334; 95 Pac. 95; 111 Wisc. 387; 87 N. W. 226; 1 Cook on Corp. (8 ed.), §

311, p. 850; 97 Ark. 374; 114 Ark. 344; 28 S. W. 431. An actual intent to defraud must be shown.

*Williams & Williams,* for appellee.

1. A stockholder has no right to surrender his stock and receive payment out of the capital fund unless such right is distinctly specified in the charter. Kirby's Digest, § 839; Cook on Corp. (7 ed.), § § 309, 311; 101 U. S. 71; 139 *Id.* 24; 86 Fed. 742; 95 Ark. 368; Kirby's Dig., § § 888, subd. 9, 838, 848, 849, 858, 860-1, etc.; 54 Ark. 576; 91 U. S. 56; 69 Conn. 29; 48 Minn. 174; Morawetz on Corp. (2 ed.), § 112; 126 Ala. 449; 73 Pac. 364; 96 Ark. 1; etc.

2. Purchases of stock of its own by a corporation are illegal and the vendor is liable. 54 Ark. 576; 96 *Id.* 1; 84 Fed. 392; 68 S. W. 1026. The "trust fund" theory has been adopted in Arkansas. 139 U. S. 417; 160 Fed. 573; 201 *Id.* 647; 96 Ark. 1; 97 Ark. 248 and many others.

3. As against creditors without notice corporations which have no surplus, can not purchase their own stock. Cook on Corp. (7 ed.), § 311; 96 Ark. 1; 212 Fed. 357. The fact that the corporation was solvent does not justify such purchase when it impairs its capital. 104 Ill. 26; 28 So. 531; 44 *Id.* 592; 73 Pac. 364; 203 Fed. 720; 84 *Id.* 392; 212 *Id.* 357.

4. Specific intent to defraud is unnecessary to render the selling stockholder liable to creditors. 95 Ark. 368; 130 S. W. 162; 75 Ark. 148; 104 Ill. 26; 126 Ala. 449; 102 Md. 608; 212 Fed. 357, etc. Subsequent creditors who have no knowledge have recourse on the selling stockholder. 75 Ark. 148; 97 *Id.* 374; 114 *Id.* 344; 135 N. W. 329; 97 Ark. 248; 191 Fed. 97; etc.; Kirby's Digest, § § 6127, 7823; 31 Ark. 441; 32 *Id.* 562; 35 *Id.* 565, etc.

Wood, J., (after stating the facts). The law under which the Ozark Trust Company was organized provides that in no event shall the paid-up capital stock of such corporations be less than $50,000. Kirby's Digest, section 889.

(1)   The allegations of the complaint show that the transaction under review resulted in a depletion or reduction of the capital stock of the Ozark Trust Company to less than the amount required under our law. The transaction was therefore invalid.   The purposes for which trust companies may be organized are set forth in chapter 31, subdivision V, section 888 Kirby's Digest. The ninth subdivision is as follows:   "To buy and sell all kinds of government, State,. municipal and other bonds, and all kinds of negotiable and non-negotiable paper, stocks and other investment securities."   This statute does not authorize a transaction of the character set forth in the complaint, but refers to investments made by corporations in shares of stock of other corporations. The purpose of the law was to allow a trust company to make investments and to add to its assets, thereby increasing the value of the capital upon which it does business.   But manifestly an investment of the capital stock of a corporation in its own shares of stock where these shares are not again reissued and sold, can have no other effect than to deplete or reduce the paid-up capital of the corporation by the shares thus taken up.   While the transaction may be in the form of a sale, in reality it is an extinguishment of the company's capital by the amount turned over to the shareholder for his stock,. and is, in legal effect, but a gift of the amount paid for the capital stock of the corporation to the individual shareholder whose shares are taken up in this way.

As is said by Mr. Morawetz:   "A purchase by a corporation of shares of its own stock, in effect, amounts to a withdrawal of the shareholder whose shares are purchased from membership in the company, and a repayment of his proportionate share of the company's assets. There is no substitution of membership under these circumstances, as in case of a purchase and transfer of shares to a third person, but the members of the company and the amount of its capital are actually diminished. * * * Every continuing shareholder is injured by the reduction of the fund contributed for the common venture;

and the creditors who have trusted the company upon the security of the capital originally subscribed, or who are entitled to expect that amount of security, are entitled to complain." Morawetz on Private Corp., § 112.

Mr. Thompson, quoting from a well known law writer, says:

"There is a great difference between dealing in the shares of other companies and in its own. The former is ordinary business, attended only with the usual risks of ordinary transactions but the latter tends inevitably to breaches of their duty on the part of the directors, and to fraud and rigging the market on the part of the corporation itself. Consequently, a corporation, to possess such power, must have it conferred by the plainest and most explicit language." 4 Thompson on Corp., section 4076; Green's Brice Ultra Vires, 95.

We are aware of the fact that where neither the charter nor the statute prohibits a corporation from purchasing its own shares of stock, and where there is no statute expressly authorizing it to do so, there is great contrariety among the authorities as to whether it may do so. 4 Thompson on Corp., section 4075. Whatever may be the rule in other jurisdictions, under our statute requiring trust companies to have a paid up capital of not less than $50,000, such companies have no power to purchase the shares of its own shareholders with its capital stock. For, as we have seen, such a transaction, where the stock is not reissued or resold and the amount brought into the corporate treasury, but depletes or reduces the capital stock below the minimum amount required by our statute.

The statute contemplates that this amount of capital shall be in the treasury for the protection of those doing business with such company at all times. And this statutory requirement is tantamount to an express prohibition against paying out the funds constituting the capital stock to a shareholder for his shares of stock. In such case the corporation would have the surrendered certificate and the shareholder the money, and to the extent of the amount given him the corporate capital

would be correspondingly reduced. See *Kom* v. *Cody, Etc. Co.,* 76 Wash 540, 136 Pac. 1155. Such a transaction is but in legal effect a refunding to the shareholder.

Our statute also requires that the purpose for which corporations are organized shall be specified by the stockholders in their articles of association, and that the amount of capital stock shall be stated therein and the amount actually paid in, the names of the stockholders and the number of shares owned by each, and that these shall be filed in the office of the county clerk where the corporation has its principal place of business, and that the president and secretary shall annually make a report showing the amount of capital stock paid in, the name and number of shares of each shareholder, and the business of the corporation. Kirby's Digest, sections 839, 845, 848. All these provisions show that the capital stock of corporations, under our law, is intended to be kept intact for the benefit of those who have business dealings with the corporation. Any transaction which results in a diminution of this capital stock at any time in any way is detrimental not only to existing and subsequent creditors, but to the shareholders themselves.

(2) The allegations of the complaint are sufficient to show that the transaction under review reduced the capital stock of the Ozark Trust Company and rendered it insolvent. This court long ago recognized the doctrine that the capital stock of a corporation is a trust fund that must be devoted to its debts, and that neither the corporation nor the individual stockholder can divert it directly or indirectly from this purpose. *Carter* v. *Union Ptg. Co.,* 54 Ark. 580; *Tiger* v. *Rogers Cotton Cleaner & Gin Co.,* 96 Ark. 1-5.

In the latter case, we quoted from Mr. Cook on Corporations, section 311, as follows: "If the corporation is insolvent at the time of the purchase it is clearly an invalid transaction and will be set aside. The rule goes still further and declares that if a corporation, by a purchase of shares of its own capital stock thereby reduces its actual assets below its capital stock and debts, or if the

actual assets at that time are less than the capital stock and debts, said purchase may be set aside and the guilty corporate officers, as well as the vendor of stock, may be rendered liable thereon at the instance of the corporate creditor." See also *Jones* v. *Dodge,* 97 Ark. 248.

Appellant contends that there is no allegation in the complaint of the insolvency of the trust company at the time the transaction under consideration took place, and that there is no specific allegation that it was done with the intent to defraud the appellee, who was a subsequent creditor. The recitals of the decree show that the cause was heard upon the evidence. Under such recital, in the absence of a showing to the contrary, we would have to presume that the evidence proved every issue of fact essential to the correctness of the court's conclusion of law. Therefore, if it were necessary, we would have to assume that it was proved that the corporation was insolvent at the time of the transaction or that the transaction itself rendered it so. We would also have to assume that this transaction was made by the appellant and the officers of the corporation with the specific intent to defraud existing and subsequent creditors.

(3) The capital stock of a trust company, under our law, is a fund that must be preserved for the benefit of all creditors. The statute was designed to give assurance to the public dealing with such companies that this capital stock would be always on hand for their protection. As was said in *Sanger* v. *Upton,* 91 U. S. 56, 60, 61, quoted in *Carter* v. *Union Ptg. Co., supra*: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private co-partnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied. otherwise than upon their demands, until such demands are satisfied  *  *  *  It is publicly pledged to those who deal with the corporation, for their security."

(4) The shareholder of a corporation especially should be bound by the law of its creation and the stat-

utes by which it is governed, and if such shareholder enters into a transaction with the officers of the corporation by which the capital stock is reduced below the minimum required by the law his act is at least a legal fraud upon the creditors of the corporation and he is liable to the extent of the amount that he has received in return for the shares of stock sold to the corporation and paid out of its capital stock. A similar question arose in *Tait* v. *Pigott*, 32 Wash. 344, 73 Pac. 364. In that case the receiver of an insolvent corporation sued a stockholder of the corporation for assets received by him in payment for a sale of his stock to the corporation, and the complaint failed to allege that the corporation was insolvent at the time of the alleged sale. The court held that such an allegation was immaterial, ''since the thing which was unlawfully done reduced the available resources of a now insolvent company, and if such reduction had not been made the amount should not be on hand for the benefit of creditors.'' See also *Union Trust Co.* v. *Amery*, 67 Wash. 1, 120 Pac. 539; *Atlanta, Etc. Association* v. *Smith*, 141 Wis. 377, 123 N. W. 106; *Tierney* v. *Ledden*, 143 Iowa 286, 121 N. W. 1050.

The allegations of the complaint show that neither pre-existing nor subsequent creditors consented to the transaction under consideration. They had no opportunity to do so, for it is alleged that no certificate of the transfer of stock was recorded as the law requires and that no notice was given to the appellee.

It follows that the decree of the court was in all things correct and it is therefore affirmed.