[No. 13593. Department One. June 15, 1917.]

JOHN F. MURPHY, *as Receiver etc., Appellant*, v.
JOHN PANTON *et al., Respondents*.[1]

CORPORATIONS—CAPITAL STOCK—PAYMENT— RECORD — CONCLUSIVE-
NESS—EVIDENCE—PAROL EVIDENCE. The record in the minute book of
a corporation showing the cancellation of part of the shares issued
to three subscribers seven years previously, for the stated reason
that such stock had not been paid for, and the purchase of the same
shares by the same subscribers to be delivered to them "as soon as
paid for," is sufficiently ambiguous to admit of parol evidence to the
effect that the stock had in fact been paid for, and that the can-
cellation and resale was a clumsy attempt to release the right to
vote the stock in the interest of a new subscriber to increased capital
who was taking over the control of the company.

SAME—STOCK SUBSCRIPTIONS—ACTIONS BY RECEIVER—PREJUDICE TO
CREDITORS. Unless it affirmatively appears that existing creditors
were prejudiced by a record in the minute book indicating that stock
subscriptions were unpaid, a receiver seeking to collect the sub-
scriptions has no greater rights than the corporation.

SAME — STOCK SUBSCRIPTIONS — ACTIONS — DEFENSES — RECORD —
ESTOPPEL. A record in the minute book indicating that stock sub-
scriptions were unpaid, does not estop the stockholders from showing
that the stock had actually been paid for, as against creditors who
could not have been prejudiced in extending a credit upon the faith
of stock subscriptions which they would likewise have extended up-
on the faith of representations that the stock was paid up.

SAME—CAPITAL STOCK—REDUCTION—CANCELLATION OF STOCK—VA-
LIDITY—TRUST FUND—EXISTING CREDITORS. Under the trust fund
doctrine, the cancellation of a stock subscription agreement does
not release a solvent stockholder from his liability to pay for the
stock because, with the consent of all the stockholders, the contract
had been "complied with to the best ability of the parties," as against
creditors of the corporation who had theretofore opened a line of
credit and a course of dealing which was subsequently continued
without actual notice of the attempted cancellation impairing the
capital, since they must be regarded as "existing" creditors.

SAME—STOCK SUBSCRIPTIONS — ACTIONS — DEFENSES — CANCELLA-
TION OF STOCK—VALIDITY. It is no defense to a receiver's action for
an unpaid stock subscription that the stock was cancelled in consid-

[1]Reported in 165 Pac. 1074.

eration of money advanced and the indorsement of a note for the corporation; since that would only make the stockholder a creditor with the right to share with other creditors.

Appeal from a judgment of the superior court for King county, Smith, J., entered May 1, 1916, in favor of the defendants, in an action to recover unpaid stock subscriptions, tried to the court. Affirmed as to respondent Panton; reversed as to respondents London *et al.*

*Wettrick, Anderson & Wettrick,* for appellant.

*Bogle, Graves, Merritt & Bogle,* for respondent Panton.

*Hall & Cosgrove,* for respondents London *et al.*

CHADWICK, J.—This suit was brought to recover upon unpaid stock subscriptions. Respondents London, Atkinson, and Wolfe are charged as subscribers to the capital stock of the John Panton Company, formerly the Edwin London Company, and later the London Panton Company, a corporation organized under the laws of this state.

Appellant contends that their liability rests primarily in the records of the company, and secondarily in the doctrine of estoppel. To make a *prima facie* case, counsel introduced the following record of date December 30, 1911, from the minute book of the company:

"On motion of John Panton, seconded by H. H. Wolfe and carried the secretary is instructed to cancel and reoffer for sale the following shares of capital stock of the company: (58) Fifty-eight shares held by Edwin London, (41) forty-one shares held by H. H. Wolfe and (16) sixteen shares held by Y. H. Atkinson. Reasons for same being cancelled on account of not having been paid for."

"On motion the company then offered the (115) one hundred and fifteen shares for sale at par. Edwin London offered to purchase (58) fifty-eight shares, H. H. Wolfe offered to purchase (41) forty-one shares and Y. H. Atkinson offered to purchase (16) sixteen shares."

"On motion of John Panton, seconded by H. H. Wolfe and carried that the offers of Edwin London, H. H. Wolfe and

Y. H. Atkinson for the (115) one hundred and fifteen shares of the capital stock be accepted and stock delivered to the parties as soon as paid for."

Over the objection of appellant, respondents were permitted to show that, at the time the minute was made, the capital stock of the Edwin London Company was $60,000, divided between Edwin London, Y. H. Atkinson, H. H. Wolfe, and a nominal stockholder holding one share; that it was deemed wise to increase the capital stock of the corporation to $125,000; that John Panton was willing to take up the whole of the increase of $65,000; that Mr. Panton demanded that the name of the corporation should be changed to the John Panton Company; that he should have control of the corporation and be its general manager; that he was unable to pay more than $54,000 in cash; that, in order to insure him the control of the corporation, it was agreed that the other parties should return into the treasury shares as follows: London, 58 shares, Y. H. Atkinson, 16 shares, and H. H. Wolfe, 41 shares, thus reducing the apparent holding of the parties by 115 shares, which, at its par value of $11,500, would overcome the 110 shares for which Panton was unable to pay, which, at its par value, would amount to $11,000; and that the interests of the three first named parties might be preserved, they subscribed for the same amount of the stock which they had surrendered. It was further shown that, on February 11, 1913, an agreement was signed by all parties save the nominal stockholder cancelling the agreement of December 30, 1911, "in its entirety, the same having been fulfilled and complied with to the best ability of both parties."

Appellant insists that the stock of London, Atkinson, and Wolfe had not been fully paid at the time the stock of the Edwin London Company was increased from $35,000 to $60,000. The court found otherwise, and without reviewing the testimony, we are content to subscribe to his holding.

But if this be true, appellant hopes to hold London, Atkinson, and Wolfe under the doctrine of estoppel, first, be-

cause the record shows an unqualified subscription upon which creditors had a legal right to rely, and second, because the company gave statements to commercial agencies showing such subscriptions and upon which credit was extended.

Addressing ourselves to the first ground of estoppel, we find no more than a clumsy attempt—the parties acted without counsel—to release their right to vote a part of their stock. The stock had been actually paid for. The parties could have successfully defended in an action brought by the corporation upon a call. The receiver can have no greater right than the corporation would have had, unless it is affirmatively shown that the rights of creditors existing at the time were prejudiced thereby. *Walton Lumber Co. v. Commonwealth Lumber Co.*, 95 Wash. 295, 163 Pac. 762.

We have so far proceeded upon the theory that the minute relied on shows a subscription on its face. This may well be doubted. Stock once issued carries a presumption that it is paid for. To surrender stock some seven years after its issuance and to subscribe and promise to pay for it is a transaction sufficiently clouded by ambiguity to warrant a resort to parol evidence to explain the transaction. Nor do we think respondents London, Atkinson, and Wolfe can be held under the second plea of estoppel.

The doctrine which sustains the right of a creditor to enforce the payment of a stock subscription is that of the trust fund. Under this doctrine no stockholder may, by his own act, put it within the power of the corporation to hold out a capital stock, either paid up or subscribed, when it is neither paid nor subscribed. A chain of circumstances or a course of conduct may make what would seem in law to be a maintaining of the capital stock, while it might not be so in fact. Although counsel seems to maintain otherwise, we had always understood that the main reliance of creditors of an insolvent corporation consisted in the right to inquire beyond the record made by the parties to the end that the true fact might be revealed. It is upon this principle that creditors' bills

are maintained. If this be the right of creditors, we can conceive of no valid objection to the right of the subscriber to reveal the true fact. The fact appearing in this case that the capital stock, in so far as the holdings of London, Atkinson, and Wolfe are concerned, has been in no way impaired,—that, instead of a subscription, as appears on the minute book and the statements given out by the company, the stock was fully paid, a creditor cannot urge an estoppel; for, in law, his position is the same whether the stock has been paid for in cash or is subject to payment on call. Estoppel implies hurt or injury, the doing of a thing which but for the thing relied on would not have been done. It is inconceivable that the complaining creditors would have extended credit on the faith of a subscription and denied it upon a representation that the stock was paid in full; yet such is the very premise to which we are driven if we are to hold London, Atkinson, and Wolfe liable as subscribers.

The right of the receiver, in the absence of an estoppel, is to be measured by the relation of London, Atkinson, and Wolfe to the corporation. Notwithstanding the abortive attempt of the parties, we think they were stockholders with paid up stock, and are not liable at the suit of the appellant.

We have not been able to satisfy ourselves that the Panton subscription can be thus disposed of. That it was Mr. Panton's intention to acquire control of the corporation, that he paid $54,000 in money, and that he subscribed for stock of the par value of $11,500, there can be no doubt. It is equally well established that he did not meet his subscription, and that all parties in interest agreed that his stock subscription should be cancelled.

We take no stock in the argument of counsel that the agreement of February 11, 1913, whereby all of the interested parties cancelled the agreement of December 30, 1911, whereby Panton agreed to subscribe for the unpaid shares, was cancelled "in its entirety, the same having been fulfilled

and complied with to the best ability of both parties," was in legal effect no more than a cancellation of the agreement to subscribe, and not a cancellation of the actual subscription which was made on February 28, 1912. The intent of the parties was to relieve Panton of his obligation to pay for the stock. Wherefore it follows, if a corporation can cancel a stock subscription so as to avoid the obligation of the subscriber, Panton is not liable. If it cannot, he is.

Counsel for Mr. Panton plant themselves squarely upon the proposition that no creditors existing at the time the cancellation was made are now complaining, and that as to nonexistent creditors, the corporation is free to act if the rights of the stockholders, as between themselves, are not violated.

The text of their brief is an unidentified quotation, viz.:

"A subscription contract, like any other contract, may be waived, cancelled or dissolved by the mutual consent of the parties interested. The interested parties are the subscriber himself, the other stockholders, and the corporate creditors existing at the time of the cancellation."

This text assumes the trust fund doctrine of corporate stock, to which this court is firmly committed. *Johns v. Clothier,* 78 Wash. 602, 139 Pac. 755; *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073; *National Realty Co. v. Neilson,* 73 Wash. 89, 131 Pac. 446; *Brenaman v. Whitehouse,* 85 Wash. 355, 148 Pac. 24; *Shaw v. Carr,* 93 Wash. 550, 161 Pac. 345; *Lantz v. Moeller,* 76 Wash. 429, 136 Pac. 687, 50 L. R. A. (N. S.) 68. The earlier cases are noted in the authorities cited.

Under the trust fund doctrine, it seems that a subscriber may nevertheless be released if he have the consent of all the subscribers and the rights of creditors are not involved. *National Realty Co. v. Neilson, supra.*

In *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* 16 Wash. 499, 48 Pac. 333, 737, a subscription to stock was held to be a part of the trust fund. The court said, at page 518:

"The unpaid subscriptions are a trust fund for the benefit of the creditors of the corporation. The presumption is that the subscribers to the capital stock of a corporation are solvent and that the amount of the capital stock can be realized. That property may be taken by agreement between the corporation and the stockholder in payment of his subscription is the settled doctrine of this court, and does not require any further discussion here. But such a contract between the corporation and stockholder must be an honest one. It must be free from any taint or suspicion of the avoidance on the part of the stockholder of a just payment of his subscription."

See, also, *Chamberlain v. Piercy*, 82 Wash. 157, 143 Pac. 977.

The demand of the statutes, as well as the logic of the cases, is that the working capital of a corporation is the amount named in its articles, and is, in theory, paid in full, either in cash or by the promise of a subscriber, to whom the law will attach the presumption of solvency. Publication of the amount of capital stock is, and must be, a continued holding out to all the world, creditors present as well as prospective, that the capital is paid or subscribed. Such was our holding in *Union Trust Co. v. Amery*, 67 Wash. 1, 120 Pac. 539.

Counsel contends that all of the subscribers, as well as the only existing creditor, consented to the cancellation. The status of those fostering the receivership proceeding is that of wholesalers who had theretofore and after the attempted cancellation furnished goods from time to time as ordered. It is contended that the claims which they now assert accrued after the attempted cancellation, and that therefore they cannot complain. We incline to the holding, although the rule contended for be admitted, if the proper facts pertain, that the complaining creditors are nevertheless existing creditors within the meaning of the term as it is employed in cases of this kind.

It would be an impeachment of the trust fund doctrine to hold that one who had opened a line of credit with a corpora-

tion (presumptively on the faith of its representations as to capital stock) and who furnished goods from time to time as the necessity of its customer required, should be denied the status of an existing creditor. To put one accustomed to dealing with a corporation to the hazard of testing its credit upon each transaction would be violative of that sound public policy which impresses a corporation's every act, but it would also put upon the corporation a bond that would be embarrassing, if not intolerable. Where relations are once assumed, the law ought to presume, in the absence of evidence of notice, that each transaction,—if, in the aggregate, they possess the character of "a course of dealing"—is based upon the faith established when the first account was opened. There is no testimony tending to show that the protesting creditors had any notice of the attempted cancellation. Upon either theory of the law, we find no escape from the holding that Mr. Panton is bound by his subscription.

The contentions of respondent Panton that the cancellation of his stock subscription operates to release him as to subsequent creditors is unsound for another reason, or possibly it is the same reason expressed in another way. Where the trust fund doctrine prevails, all the cases holding that a subscription to corporate stock "may be waived, canceled or dissolved" rest upon the legal assumption that the stock, whether subscribed or paid up, is not impaired by the withdrawal of the subscriber or stockholder. If the subscriber sell to another in good faith, as the court held in *Walton Lumber Co. v. Commonwealth Lumber Co., supra,* the purchaser stands in the shoes of the first subscriber. It is so if there be a sale or transfer of issued stock. If the subscriber be insolvent, a corporation may compromise its claim, but it must be for a valuable consideration, and is sustained upon the theory that the money worth of the capital stock is not impaired; that something is substituted for the promise of the subscriber. Stock, or a live subscription, must represent the money worth of a corporation up to the full extent of

the authorized capital. "If a trade in the stock impairs the money worth of the stock, it is proscribed. If it does not, it is not an unlawful thing." *Shaw v. Carr, supra.*

In the instant case, there was no pretense of keeping the capital unimpaired. There was nothing to sustain the act of cancellation except the cancellation itself. This is not enough, for, in legal effect, there was an impairment to the extent of the cancellation. There remained neither an issue nor a subscription to cover the difference of eleven thousand five hundred dollars.

Counsel for Mr. Panton insist that there was a consideration for the cancellation, in that Panton had advanced money for the benefit of the corporation, and had indorsed a note made by it to the landlord in payment of its rent. This would not release Mr. Panton from his obligation as a subscriber to the stock. He would, at best, be a creditor of the corporation with the privilege of asserting his claim, to be paid *pro rata* with other creditors. We think the same question was passed upon by this court in the case of *National Realty Co. v. Neilson, supra,* where a like claim was made; the court there saying that the allowance of Neilson's claim "would be to permit a stockholder as such to share equally with the creditors in the application of the assets. There can be no question but that the rights of creditors in the assets of an insolvent corporation are superior to those of the stockholders." If the right of a creditor is superior to that of a stockholder, it follows that they cannot be equal.

Affirmed as to London, Atkinson and Wolfe. Reversed as to Panton, with directions to enter a judgment for the amount of his subscription.

ELLIS, C. J., MOUNT, MAIN, and MORRIS, JJ., concur.