[No. 13617.   Department Two.   March 16, 1917.]

WALTON LUMBER COMPANY, *Plaintiff*, v. COMMONWEALTH
LUMBER COMPANY, *Defendant*.

O. B. WHITNEY, *as Receiver etc., Appellant*, v.
G. W. STETSON *et al., Respondents*.[1]

CORPORATIONS—STOCKHOLDERS — LIABILITY — TRANSFER OF STOCK. The original subscribers to the capital stock of a corporation, who, in good faith, sold and transferred their stock while the corporation was a going concern, are not liable to subsequent creditors, upon their original stock subscriptions.

SAME. The resolution by the directors of a corporation levying an assessment upon the capital stock of two per cent per month, until the entire capital stock is paid up, while in the nature of a call making the subscriptions presently due, does not change the nature of the debt or render the original subscribers liable to subsequent creditors, where they had, while the company was solvent, sold and transferred their stock in good faith to parties who assumed payment of the subscriptions.

SAME—CAPITAL STOCK—TRANSFER — RECORDING. Where the only book kept by a corporation was its minute book, and transfers of stock and the contracts relating thereto were filed in the minute book, failure to further record being no fault of the stockholders, there is a sufficient recording of the transfers, as against subsequent creditors.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 11, 1916, dismissing as to certain defendants an action by a receiver to establish liability for unpaid stock subscriptions, tried to the court. Affirmed.

*S. G. Climenson* and *Thomas R. Shepard*, for appellant.

*Jay C. Allen, Myers & Johnstone, J. P. Wall, John W. Roberts, George L. Spirk, Douglas, Lane & Douglas, Bogle, Graves, Merritt & Bogle*, and *O. E. Sauter*, for respondents Stetson *et al.*

*Wright, Kelleher & Allen* and *Howard W. Sanders*, for respondent Mary E. Sanders.

[1]Reported in 163 Pac. 762.

Mount, J.—The controlling question in this case is whether the original subscribers to the capital stock of a corporation,. who have, in good faith, sold and transferred their stock while the corporation was a solvent, going concern, may be held liable to subsequent creditors upon their original unpaid stock subscriptions, when the corporation, after such transfer, becomes insolvent.

The facts upon which this question arises may be briefly stated as follows: The Commonwealth Lumber Company was organized on November 10, 1911, by sixteen persons, who were presidents of mill companies operating in Seattle. The capital stock was fixed as $150,000, divided into shares of a hundred dollars each. One hundred and ten thousand dollars was subscribed. None of the stock appears to have been issued to the stockholders. Each stockholder was a trustee in the corporation. On March 15, 1912, the trustees adopted the following resolution:

"It was voted that there be levied upon the capital stock of this company an assessment of two per cent per month on stock subscriptions, payable from January 1st, 1912, on the first of every month, until the entire capital stock is paid up."

None of the capital stock was ever fully paid. Some of the subscribers paid these monthly payments in cash; others were paid by dividends, as they were declared; and others were not paid. During the year 1913, dissension arose among the stockholders, who were all directors in the company, concerning the business of the company. Some of these stockholders desired a dissolution. Others desired the company to continue in the business. It was then determined that, on a dissolution of the corporation, the stockholders would receive twenty-five per cent of the amount which had been paid into the corporation upon stock subscriptions, and it was agreed that G. N. Skinner and R. C. Patterson, who were then stockholders in the corporation, would purchase the shares of the other stockholders, by giving joint nonnegotiable notes, at one year, for sums amounting to twenty-five

per cent of what the original subscribers had paid into the company, and would guarantee the respective transferrers of stock against all liability on account of further assessments on the original stock subscriptions.   This was agreed to by all of the trustees and stockholders of the company, and on December 1, 1913, the stock was all transferred to these purchasers.   It is claimed that Skinner and Patterson, at that time, were insolvent.   This is a disputed question. These transfers of stock were never entered on the books of the company, but were all attached together and placed in the minute book of the corporation, which appears to be the only book which the corporation kept.   About a year later, after the business had been conducted by Skinner and Patterson, an action was brought against the corporation by subsequent creditors to declare the corporation insolvent, and for a receiver.   That action resulted in the appointment of a receiver, who brings this proceeding to establish the liability of the original subscribers for unpaid stock subscriptions.   At the trial of the case, the court made findings as follows:

"From the evidence adduced at the trial this court finds that the transfers of stock made by the respondents on December 1st, 1913, were made in good faith and for a valuable consideration, and while the company was solvent, and that they were not thereafter stockholders in said company; and that the indebtedness of the company at that time amounted to the sum of $1,660.03, exclusive, however, of the claim of Brace & Hergert Mill Company due from the Commonwealth Lumber Company on the 1st day of December, 1913, which latter claim has been waived and released by said Brace & Hergert Mill Company.   And it further appearing to the court that at this hearing the respondents in open court offered to pay said indebtedness, and now, on this day, the said respondents having heretofore paid to the clerk of this court the said sum of $1,660.03, the amount of the indebtedness of the Commonwealth Lumber Company on December 1st, 1913, and the court having found the issues in favor of all the respondents except G. N. Skinner and R. C. Patterson, and against the petitioner, it is therefore

"Ordered, adjudged and decreed, that this proceeding be, and the same is hereby dismissed as to all the within named respondents except G. N. Skinner and R. C. Patterson."

The evidence is ample to support these findings.

The general rule of law, applicable to this question, may be tersely stated as follows:

That the subscription contract for the capital stock of a corporation, like any other contract, may be waived, cancelled or dissolved by the mutual consent of all the parties interested. The interested parties are the subscribers and other stockholders, and the corporate creditors existing at the time of the cancellation of the subscription contract.

In 7 R. C. L., at § 388, it is said:

"While it is true that stockholders generally have a right to transfer their shares, and thus disconnect themselves from the corporation and from any responsibility on account of it, yet it is equally true that there are some limits to this right. It is not every transfer that releases a stockholder from his responsibility as such. The decisions of the various courts in the United States, which have passed on the question, appear to be in general agreement in holding that a transfer of stock made by the stockholder for the mere purpose of evading liability for corporate debts, is fraudulent and void as to corporate creditors, and that such transferor may be treated, for the purpose of the statutory liability, as a stockholder, and held liable as prescribed in the statute. In order that the stockholder may relieve himself from liability to creditors of the corporation, the transfer must be *bona fide*. . . . But if the transfer be made honestly, and without any intention of defeating the creditors, the mere fact that the purchaser was insolvent at the time is not sufficient to hold the transferor still liable for the debts."

At § 389, 7 R. C. L., it is said:

"As regards the common-law liability to the extent of unpaid subscriptions, the rule is well settled that a transferee of stock from the original subscriber, taking with notice that the stock is not fully paid up, is liable to creditors of the corporation to the extent of the amount unpaid."

At § 391, 7 R. C. L., it is said:

"As a general rule, stockholders are liable only for the debts of the corporation contracted while they were stockholders.  So if a solvent stockholder transfers his shares, in good faith, to one who is insolvent at the time when the stockholders' liability is subjected to the payment of debts, a fund derived from assessments levied on such transferring shareholders must be applied exclusively to the payment of creditors whose claims existed at the time of such transfer. It cannot go into a common fund to be distributed *pro rata* among all the creditors of the corporation."

In 10 Cyc., at page 700, it is said:

"The general rule is that a *bona fide* transfer of shares, whether they be paid or not, made in the prescribed manner on the books of the corporation, terminates the liability of the transferee either to the company or to its creditors.

"The transferrer of shares does not by transferring them absolve himself from liability for debts of the corporation contracted while he held them, and before he transferred them, which is no more than saying that a shareholder is liable for debts of the corporation contracted while he held that relation."

The rule is stated by Mr. Thompson, in his work on Corporations (2d ed.), vol. 4, § 4371, as follows:

"The general rule is that an absolute transfer by a stockholder duly registered on the books of the corporation relieves the transferrer from all further liability upon the uncalled subscription price of his stock.  The rule has been concretely stated thus: 'A transfer of stock made in good faith and at a time when the corporation is a going and solvent concern, and which is entered upon the books, would certainly relieve the transferrer from all the responsibilities which attach to him as a stockholder.'  The court further said that 'the owners of corporate stock devest themselves of the liabilities incident to their relation to the corporation when they have actually transferred their stock in the same manner provided by the law.' "

See, also, *Stewart v. Walla Walla Printing & Publishing Co.*, 1 Wash. 521, 20 Pac. 605.

We think this must be the correct rule, because shares of stock, like other personal property, are transferable, and are subject to barter and sale. If an original subscriber to the capital stock of a corporation may not, by the sale of his shares in good faith, at a time when the corporation is a solvent and going concern, devest himself from original liability, with the consent of all the parties interested, his stock subscription unpaid, it becomes a continual liability which he cannot escape. No case is called to our attention which holds that rule unreservedly. It is contended by the appellant that the trust fund theory prevails in this state, and that, by reason thereof, the liability of the original subscriber cannot be canceled or avoided. In our opinion, that rule applies only to creditors of the corporation at the time of transfer, and not to subsequent creditors who became such after the original subscriber has parted with his stock so that the liability for his original subscription is assumed by another stockholder. We have no doubt of the rule that an unpaid subscription to capital stock may be enforced by a creditor who becomes such while the unpaid subscriber remains a stockholder, but that question is not in this case, because the court found, upon ample evidence to support the finding, that, at the time this stock was transferred to Skinner and Patterson, the corporation was a solvent, going concern, and that all the debts created by the corporation prior to the time of this transfer were fully paid, and that the transfer of stock was in good faith.

It is argued by the appellant, further, that the resolution above quoted, to the effect that the subscribers were required to pay two per cent per month on the stock subscriptions until the capital stock was fully paid, was a call which could not be avoided. It is probably correct to say that this resolution was, in substance, a call, but it clearly did not change the character of the debt. The subscription by the original stockholders created the debt of the subscribers to the corporation. The call simply declared a portion of that debt

due and payable. When the trustees, by unanimous agreement, sold their stock, transferred it, or authorized its transfer on the books of the company to Skinner and Patterson, these latter gentlemen assumed the debts which were due under those calls. No one but the stockholders in the corporation, and the creditors at that time, could object to the assumption of that debt by Skinner and Patterson. Subsequent creditors were not interested therein.

It is also objected that there was really no transfer of the stock upon the books of the corporation. The evidence shows that the only book kept by the corporation was a minute book. When the stock was purchased by Skinner and Patterson, these two persons were then in complete charge of the corporation and of its books. They filed these transfers, and contracts relating thereto, in the minute book. The fact that the transaction was not further recorded therein was no fault of the stockholders who were, by the transfer, out of the corporation, and, of course, they cannot be bound by the neglect of Skinner and Patterson to properly record the contracts, if they were not properly recorded. We think the mere fact that these contracts were placed in the minute book, even though not recorded therein, was sufficient. 4 Thompson, Corporations (2d ed.), § 4332.

We are convinced that the trial court was right in determining there was no liability upon the respondents in this case, and the judgment is therefore affirmed.

MORRIS, HOLCOMB, and PARKER, JJ., concur.

FULLERTON, J., concurs in the result.