CHARLES R. BUTTS, SHAREHOLDERS' AGENT, ET AL. *vs.* JOHN T. KING ET AL.

Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The defendant subscribed for 1996 of the 2000 shares of the capital stock of the B. & D. Electric Railway Company. Before the company incurred any debts or performed any corporate act other than perfecting its organization, the defendant assigned all his subscription rights to S for $25,000, which was paid by the A. Company in which S was the principal stockholder, upon the understanding with S, later carried into execution, that the A. Company would be reimbursed from the proceeds of bonds to be issued by the railway company. The defendant's intent in making the assignment was not fraudulent; he did not know of the arrangement for reimbursing the A. Company; nor did he have reason to believe that S, who was a man of large business affairs, was unable to pay the subscription. After the insolvency of the railway company, certain of

Butts *v.* King.

its bondholders brought this action, claiming that the defendant was liable upon his stock subscription. *Held:*

1. That in making his subscription, the defendant contracted with the corporation to pay for the stock upon legal call, and assented to become security for the payment of the corporate debts during the period of his ownership of the subscription rights or of the stock to which they entitled him to the extent of the unpaid portion of his subscription or stock.

2. That the defendant's subscription rights were assignable, the transfer being effective as a novation when accepted by the corporation and recorded on its books.

3. That the conduct of the corporation in recognizing and acquiescing in the substitution of S for the defendant was an acceptance of the assignment; no formal vote was necessary nor was it essential that all the subscribers consent to the transfer.

4. That the formal requirements of the by-laws for the assignment, execution, and recording of a transfer of stock did not apply to the assignment of a subscription.

5. That the defendant was not liable to the plaintiffs, since a transfer of a stock subscription in a solvent corporation, if made in good faith and accepted by the corporation, will relieve the transferor of all responsibility to subsequent creditors, even though the transferee be financially irresponsible—a generally accepted rule of property which the legislature did not intend to alter by § 3435 of the General Statutes, providing that "every stockholder, whether an original subscriber or not, shall be liable for any balance due on the stock held by him."

Argued June 5th—decided July 28th, 1924.

ACTION by the holders of defaulted debenture bonds of the Bridgeport and Danbury Electric Railway Company to recover their amount, and in aid thereof to establish a liability of the defendant King upon his subscription to the capital stock of said company, brought to and tried by the Superior Court in New London County, *Brown, J.;* facts found and judgment rendered for the plaintiffs for the amount of their respective bonds with interest, for the appointment of a receiver of the defendant Railway Company, and in favor of the defendant King, from which the plaintiffs appealed. *No error.*

On June 25th, 1907, the General Assembly passed a resolution, the objections of the Governor notwith-

standing, incorporating The Bridgeport and Danbury Electric Railway Company; its authorized capital stock was $200,000, composed of 2000 shares of the par value of $100 each, with the right to increase the same up to $1,500,000, and it was authorized to borrow money and secure the payment of the same by the issuing of its bonds; no provision of this charter required that its capital stock, or any part thereof, should be paid before the corporation should commence business. The incorporators held their first meeting on March 25th, 1908, and made and signed the following subscription to the capital stock, which was accepted by the corporation, but not expressly by formal vote, and spread upon its records: "We, the undersigned, each for himself, hereby subscribe to the capital stock of The Bridgeport and Danbury Electric Railway Company in the amounts set opposite our respective names." Among these subscribers was defendant John T. King, 1996 shares, $199,600. On the same day the subscribers met, accepted the charter as set forth in the joint resolution, and elected directors, of which King was one, and adopted by-laws. At a meeting of the directors of the corporation on the same day, King was elected president and the officers directed to file a certificate of organization, and thereafter it was filed with the Secretary of State. King and the other incorporators intended to build and operate a street railway under this charter, but in spite of his repeated efforts, King was unable to secure capital for the execution of this purpose, and on October 15th, 1909, he sold, assigned and transferred to A. William Sperry for $25,000, all of his subscription for 1996 shares of the capital stock of the Bridgeport and Danbury Electric Railway Company; the same being evidenced by a written assignment. Sperry paid King $10,000 in cash and the balance by a thirty-day note; the payments

being made by check and note of the Aetna Construction Company, in which Sperry was a principal stockholder, and both were paid.

The assignment was recorded in the records of the Bridgeport and Danbury Electric Railway Company, and it assented to the assignment and accepted Sperry as subscriber to the stock in place of King, but not by formal vote. No call was ever made upon King or Sperry by the Bridgeport and Danbury Electric Railway Company for payment of the subscription for the 1996 shares of stock. Sperry was not, at the date of the assignment, nor at any time since, financially able to pay his subscription in full from his individual resources; but it did not appear in evidence that Sperry was a man of no financial responsibility, or that King knew or believed him to be incapable of responding to the obligation of this stock subscription; on the contrary, Sperry was a construction engineer of wide experience and carried on a large general construction business. At the date of the assignment, the Bridgeport and Danbury Electric Railway Company had not undertaken any corporate enterprise other than its organization; it owed no debts and had done no corporate act, whereby its credit had been directly or indirectly pledged, or incurred any obligation directly or indirectly. King assigned his subscription in good faith and without intent upon his part to avoid any legal obligation; his sole purpose being to transfer to Sperry all his rights as a subscriber to the 1996 shares. King did not retain after this assignment any interest in the stock subscription and at no time thereafter acted or assumed or claimed to act as a stockholder of the Bridgeport and Danbury Electric Railway Company, and was not held out or represented to be a subscriber to its stock or a stockholder thereof.

On February 1st, 1910, a meeting of the stockholders

of this company was held and directors elected, Sperry voting 1992 shares of stock, and thereafter on the same day, a meeting of the directors was held and officers elected, and thereafter on February 10th, at a meeting of the stockholders, it was voted to issue $600,000 of debenture notes, and also $26,000 of temporary debentures, Sperry voting 1994 shares of stock. This company later issued its debenture notes, and with the proceeds commenced to build and operate a street railway under its charter. The assignment by King to Sperry was not made in contemplation of any future indebtedness or obligation to be incurred by the Bridgeport and Danbury Electric Railway Company, and with no knowledge that Sperry, or any other person, by virtue of such subscription rights, intended to issue any obligation of the Railway Company in order to pay the consideration for the assignment or to reimburse Sperry or the Aetna Construction Company for the consideration paid for the assignment. After February 10th, 1910, practically all of the expenditures of the Bridgeport and Danbury Electric Railway Company were made through the Aetna Construction Company. Large sums of money appeared upon the books of the Construction Company as having been disbursed for this Railway Company, and upon the books of the Railway Company these amounts appeared as paid to the Aetna Construction Company. Substantially all of the money paid by the Railway Company to the Construction Company was derived from the sale of its debenture notes. King had no knowledge that Sperry or the Construction Company was ever reimbursed for the sum paid him for the assignment of his subscription rights out of the proceeds of the debenture notes of the Railway Company, or out of any of its funds. At the time of the assignment of King to Sperry, the Railway Company

had no funds, nor was the sum paid King in consideration of the assignment, or any part thereof, taken from any funds or assets of the Railway Company.

The first issue of debenture notes of the Railway Company was on February 10th, 1910, when $26,000 was credited to debenture note account. In 1910, and in the following years, the Railway Company constructed and operated a street railway line under its charter and incurred large obligations, including those of plaintiffs. On November 11th, 1914, the Railway Company transferred all its property, rights and franchises to the Danbury and Bethel Street Railway Company, and from and after that date the Bridgeport and Danbury Electric Railway Company ceased to engage in business, or to perform any corporate act. Section 7 of the charter of the Bridgeport and Danbury Electric Railway Company provided that the shares of its stock should be transferable only on the books of the company in such manner as the by-laws should provide, and §§ 5 and 15 of the by-laws provided that the transfers of stock should be recorded in the books kept by the secretary and then only when made by written assignment. Plaintiffs Butts, Linsley and Hamilton are holders of debenture notes dated January 1st, 1910, issued by the Bridgeport and Danbury Electric Railway Company. These notes are due and unpaid and with interest there are, respectively, due to Butts $5,104.50, to Hamilton $2,589.19, to Linsley $657.24. The plaintiff Ives, receiver of the Danbury and Bethel Street Railway Company, claims to be a creditor of the Bridgeport and Danbury Electric Railway Company, but his claim has not been stated or adjudicated.

*Frederick H. Wiggin*, with whom, on the brief, were *John P. Huntington* and *Phillip Z. Hankey*, for the appellants (plaintiffs).

*William H. Comley,* with whom was *Charles S. Canfield,* for the appellee (defendant King).

WHEELER, C. J. The plaintiffs sue as creditors of the Bridgeport and Danbury Electric Railway Company, alleging that they hold debenture notes of this company and that defendant King subscribed to 1996 shares of the capital stock of the company of the par value of $100 which has never been paid, and that he thereafter attempted to evade his obligation on his subscription by assigning the same to A. William Sperry; that the company has abandoned its business and refused to call in or demand of King the unpaid stock subscription; and that the company for a long time prior to the date of the complaint has been and still is insolvent and unable to meet its obligations. The answer of King admits the subscription, that it has not been paid, and that no call has been made on him to pay it, and further alleges that he assigned his rights under his subscription to Sperry, and the company assented to the assignment and accepted Sperry as subscriber to this stock in place of King, and that thereafter every corporate act taken and every indebtedness incurred were performed under and by virtue of the ownership and control of the 1996 shares of stock by Sperry, and further, that at the time of the assignment, the company owed no debts. The reply set up that King never intended to pay for his stock, and assigned his subscription to Sperry for the fraudulent purpose of avoiding his obligation thereunder and in contemplation of the subsequent issue of these debenture notes, and that the consideration for the assignment was paid by the Bridgeport and Danbury Electric Railway Company, and the assignment made for the purpose of defrauding the creditors of the company. The rejoinder denies the allega-

tions of the reply.   The court found the issues for King.

The plaintiffs seek to correct the finding.   Whether the finding shall be corrected, as the plaintiffs request, is of vital, if not controlling, influence upon this appeal; for this reason we have given the claimed corrections of the finding most careful consideration.   The finding of the assent to the assignment and of the acceptance of Sperry as a subscriber in place of King was fully justified by the evidence.   The assignment was recorded on the books of the company and thereafter until it ceased to function, the company recognized Sperry as the owner of the 1996 shares of stock, and never afterward recognized King as such owner.

The plaintiffs also ask that the finding be corrected so as to recite, in substance, that the $25,000 paid King for the assignment of his stock subscription to Sperry was paid him by the Aetna Construction Company and advanced by it to the Bridgeport and Danbury Electric Railway Company and credited to the Construction Company on the books of the Bridgeport and Danbury Company, and a few months later repaid by this company to the Construction Company out of the proceeds of the sale of bonds of the class held by the plaintiffs and issued by the Bridgeport and Danbury Company, which, by this transaction, was rendered insolvent.   We think the finding ought to be corrected by stating that the money paid King by Sperry was advanced to Sperry by the Aetna Construction Company, and that at this time or later, Sperry and the Construction Company agreed that the advance by the Construction Company should be repaid to it by the Bridgeport and Danbury Company out of the proceeds of the sale of debenture bonds to be issued by it and of the same class of bonds as those held by the plaintiffs.   There is no evidence that the

Butts *v.* King.

Bridgeport and Danbury Company, at or before the assignment, agreed to reimburse the Construction Company for this advance out of the proceeds of a future issue of bonds. The first sale of these bonds was some four months after the assignment. So that there is no basis for a finding that the Bridgeport and Danbury Company was insolvent at the date of the assignment and made so by the issuance of bonds for which it had no assets to pay. The finding that at this time, this company had done no corporate act, nor incurred any debt, and had no funds, nor did the amount paid King come out of its treasury, is literally in accordance with the evidence offered.

Plaintiffs also request a finding that King knew or ought to have known of this transaction between Sperry, the Construction Company and the Bridgeport and Danbury Company. The evidence fails to substantiate this, and we cannot find that the trial court erred in finding the facts, which in most sweeping language relieve King of all knowledge of or responsibility for any arrangement of this character made between Sperry and the Construction Company. The issue raised by the reply, of the fraud of King in this entire transaction, is not pressed on this appeal. Finding 31: "Said assignment of his subscription rights by said King was made in good faith and without intent upon his part to avoid or escape any legal obligation whatsoever," and finding 32: "By said assignment said King had no other purpose than to transfer to said Sperry all his rights as a subscriber to 1996 shares of the capital stock of the defendant corporation," stand unquestioned by the plaintiffs.

The finding should also be corrected by adding that the assignment by King to Sperry took place while King was in complete control of the corporation, while the acceptance by the corporation of Sperry as a sub-

scriber in place of King took place after the assign-
ment had been delivered to Sperry and at a time when
King had ceased to have any connection with this
corporation.

The correction of the finding asked for, by adding
that none of the provisions of section seven of the
charter or sections five and fifteen of the by-laws were
ever complied with, was properly refused.   Section
seven of the charter and section fifteen of the by-laws
refer to transfers of stock after issue, not of rights to
subscribe to stock.   Section five of the by-laws provides
for the keeping of all proper records of the corporation
in books; the recording of the assignment of subscrip-
tion rights by King to Sperry was a proper subject for
record by the corporation, and we are unable to find
that the finding that the assignment "was duly re-
corded upon the records of the defendant corporation"
is not supported by the evidence.

The other claimed corrections of the finding are
either not supported by the evidence or immaterial.
The corrections of the finding made do not substantially
affect any question of law remaining before the court
on this appeal.

The finding of the absence of fraudulent intent on
the part of King, of the fact that the consideration
for the assignment of subscription rights by King to
Sperry came from Sperry and not from the Bridge-
port and Danbury Company, and of the absence of
any debt of that company during the period King
owned his subscription rights, has disposed of the
major part of the plaintiffs' appeal.   The remaining
grounds of their appeal are five: that King, as sub-
scriber to this stock, could not legally assign his sub-
scription rights; that there was no novation; that the
assignment was not properly recorded; that King's
transfer of a stock subscription to an irresponsible

person is no defense in behalf of the transferor as against the corporation's creditors, whether their claims accrue before or after the time of the attempted transfer; and that under the Connecticut statutes, King is liable on his stock subscription. We take them up in the order stated. When Mr. King became a subscriber to the stock of the Bridgeport and Danbury Company, he entered into a contract of personal liability with the corporation to pay the amount of his subscription when legally called upon for it, and he thereby assented to become security for the payment of the debts of the company during the period of his ownership of the subscription rights or of the stock to which they entitled him, to the extent of the unpaid portion of his subscription or stock. *Davis* v. *Essex Baptist Society,* 44 Conn. 582, 586; *Mann* v. *Cooke,* 20 Conn. 178, 187.

The right to subscribe for stock in a corporation when perfected is a species of personal property and not infrequently possesses a money value in the market. If an owner has received stock in place of his subscription rights, he may sell his stock and make a valid transfer of the same. For the same reason, because he is dealing with his own property, he may in good faith assign his subscription rights to another. We so held in *Hartford & N. H. R. Co.* v. *Boorman,* 12 Conn. 530. That was a suit brought against the defendants as assignees or purchasers of stock, to recover for instalments required to be paid on their shares. "The reasons for our decision," we say, "subjecting the original subscribers to personal liability, apply, with equal force, to those who become stockholders by purchase." The Michigan court, ranging itself with the great weight of authority upon this point, holds: "It cannot be said that the subscription contracts of the original stockholders are not assignable. When a

person signs articles of association of a corporation, the subscription itself constitutes the subscriber a stockholder, and he becomes liable to pay the amount, and the corporation becomes obligated to issue the stock to him upon payment of the amount. It is a mutual contract and such rights are assignable." *Valentine* v. *Berrien Springs Water Power Co.*, 128 Mich. 280, 87 N. W. 370. See also *Burke* v. *Smith*, 83 U. S. (16 Wall.) 390, 400; *Merrimac Mining Co.* v. *Levy*, 54 Pa. St. 227, 229; *Baltimore City P. Ry. Co.* v. *Sewell*, 35 Md. 238. Of the authority on the other side, Cook on Corporations (8th Ed.) Vol. 1, § 62, says: "In California it is held that no substitution of stockholders is legal; but the weight of authority clearly sustains a contrary rule."

In order to make the assignment effective, it must be accepted by the corporation and recorded upon its books. Upon such acceptance and recording, the relation of subscriber to the corporate stock arises between this transferee and the corporation, because the same privity then exists as had existed between the original subscriber and the corporation. *Hartford & N. H. R. Co.* v. *Boorman, supra.* The original subscriber as between himself and his transferee may vest in the transferee his subscription rights to these shares of stock, but he cannot by his act alone, cast upon the transferee the obligation to pay the unpaid subscription as called for and relieve himself of his liability therefor. *Hood* v. *McNaughton*, 54 N. J. L. 425, 429, 24 Atl. 497. Until such acceptance and recording the original subscriber will continue liable for all calls made for the unpaid subscription to this stock. *Davis* v. *Essex Baptist Society*, 44 Conn. 582, 585.

The acceptance by the corporation of the transferee as a subscriber in place of the original subscriber need not be by formal action of the corporation expressed

in vote or otherwise. It may be implied from the acts and course of conduct of the corporation; and the continuing recognition of the substitution of the transferee in place of the original subscriber through a period of years will be strongly evidential of an assent by the corporation to the transfer, and justify the conclusion of an acceptance by the corporation.

In *Burke* v. *Smith,* 83 U. S. (16 Wall.) 390, 400, which was an action against original subscribers to stock which they had transferred, the court disposes of the point we are discussing in this fashion: "It is . . . denied that the city accepted the transfer. To this it may be answered that the acceptance is implied in the admission of record. There could have been no transfer without the assent of both parties. More than this. The other evidence tends strongly to show that the mayor and some members of the councils of the city knew of the transfers and assented to them, and the city never dissented from the arrangement. It is true that a mere assignment of his share by a subscriber does not relieve him from liability until the assignee is substituted in his place. But here the substitution was recognized by the company. The stock was not charged to the appellees on the books, and after the lapse of nine years it is too late to affirm that the transfer was not accepted."

In the instant case the transfer was made by written assignment which was duly recorded on the books of this corporation. From the date of the transfer King never acted as a subscriber or stockholder of this corporation, and it never recognized him as such, and at all subsequent meetings of the corporation, the voting power of the 1996 shares of the capital stock was exercised by, and all acts of the corporation were performed under and by virtue of the ownership of 1996 shares by A. William Sperry or his assignees by virtue of

the assignment from King to Sperry. This continued down to the 11th day of November, 1914, when the corporation transferred all of its property, rights and franchises to the Danbury and Bethel Street Railway Company, and thereafter ceased to engage in any business or perform any corporate act. No conclusion could be legally drawn from these facts other than that drawn by the trial court, that the Bridgeport and Danbury Company accepted this assignment and thereafter recognized Sperry in the place of King as a subscriber to the shares originally subscribed for by King.

Some of the authorities appear to hold that the acceptance of the transfer of unpaid stock or unpaid subscription rights must be by the consent of all stockholders in the one case, or all subscribers in the other case. The corporation acts for each stockholder and subscriber and an acceptance by it ought to be sufficient to protect the rights of all. Thereafter the only interest which would not be bound by its acceptance would be the existing and prejudiced creditor. A rule requiring the consent of all stockholders or subscribers to a transfer would place an unnecessary restriction upon the right of transfer of such property. Yet if this were the rule to govern this case, the facts found admit of no other legal conclusion than that all of the subscribers to the stock of this corporation did consent to this transfer. That consent is necessarily to be implied from their action as subscribers or stockholders and their long continued acquiescence in the legality of this transfer and their failure to question it at any time.

Between King, Sperry and the Bridgeport and Danbury Company, a complete novation took place. Upon the assignment of all of his rights from and obligations to this company under his subscription rights to Sperry,

and the acceptance of Sperry in place of King as the new owner of these subscription rights, the obligation of King to the company ceased and a new obligation, that between Sperry and the company, arose taking the place of that formerly existing between King and the company. This substitution of debtors the law calls a novation. So far as concerns King's obligation to the company under his subscription, it had ceased as to the right of the corporation to pursue it, but of course the corporate action could not prevent attack by existing creditors upon the transfer. No novation between King, Sperry and the company could deprive existing creditors of the right to collect the unpaid subscription and appropriate it to the payment of their debts; by their acts and conduct, and by these alone, could their rights as creditors cease to exist. *Allen* v. *Rundle*, 45 Conn. 528.

The claim that there was no transfer by King to Sperry because there had been no proper record upon the books of the corporation as required by the provisions of the charter and by-laws, to which we have referred, is met by the finding. We have refused to correct the finding in accordance with this claim because the provisions referred to relate to the transfer of certificates of stock to be issued and not to an assignment of subscription rights. The basis for the plaintiffs' claim appears to be that there could be no such assignment until there had been a written assignment of the stock with power of attorney, executed and recorded as in the case of a transfer of a certificate of stock. Such formalities are not required since these provisions of the by-laws do not apply to an assignment of a subscription to stock.

Assuming that the finding shall stand, the plaintiffs assert as their most relied-upon error that King must remain liable to future creditors of the corporation on

his stock subscription irrespective of the finding of the absence of fraudulent intent and of the fact that the consideration for the assignment did not come out of the treasury of the corporation. They base their claim upon the legal proposition that an attempted transfer of a stock subscription to an irresponsible person is no defense in behalf of the transferor as against the corporation's creditors, whether their claims accrue before or after the time of the attempted transfer. The foundation of this claim rests upon the assumption of fact that Sperry was an irresponsible person, while the finding is far from this. Apart from this, the proposition is bad law. Where a corporation accepts a transferee in place of the original subscriber, there being, as in this case, no then existing creditors and no fraudulent purposes in the transfer, the transfer will be good though the transferee be of no financial responsibility. In the assignment of King's stock subscription three parties had an interest, King as transferor, the Bridgeport and Danbury Company, and Sperry as transferee. Since no assignment could be made in prejudice of the rights of existing creditors, where there are such creditors, they constitute a fourth interest in the transfer. But when, as in this case, there were no existing creditors, this fourth interest is nonexistent and only the transferor, the transferee and the corporation are parties to the transaction. The corporation can accept or refuse to accept; it alone is the judge of the financial responsibility of the transferee and it alone is concerned since there are no existing creditors. Subsequent creditors could not have given credit upon the faith of a subscriber who has transferred his subscription; they may look to unpaid subscriptions from stockholders and subscribers existing at the time of their credit, but not to those who transferred their stock or subscription rights to transferees accepted by

the corporation prior to the date of their credit.   If the corporation be in failing circumstances, if it have existing debts, the transferor will as to these creditors continue liable for the unpaid subscription of the stock or subscription rights which he has transferred to another and which transfer has been accepted by the corporation.   *Rochester & K. F. Land Co.* v. *Raymond,* 158 N. Y. 576, 53 N. E. 507; Cook on Corporations (8th Ed.) Vol. 1, § 263.   The New York Court of Appeals states the rule to be: "A transfer of stock made in good faith and at a time when the corporation is a going and solvent concern, and which is entered upon the books, would certainly relieve the transferor from all of the responsibilities which attached to him as a stockholder."   *Tucker* v. *Gilman,* 121 N. Y. 189, 24 N. E. 302.   And 7 R. C. L. p. 400, § 388, summarizes the authorities thus: "If the transfer be made honestly, and without any intention of defeating the creditors, the mere fact that the purchaser was insolvent at the time is not sufficient to hold the transferor still liable for the debts."   See also *Walton Lumber Co.* v. *Commonwealth Lumber Co.,* 95 Wash. 295, 298, 300, 163 Pac. 762; *Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150, 163, 25 N. E. 680; *Hall* v. *Hughes,* 119 Md. 487, 491, 87 Atl. 387; *Harvey* v. *Weitzenkorn,* 232 Pa. St. 447, 453, 81 Atl. 447; Note, Ann. Cas. 1912B, 493; 14 Corpus Juris, p. 620.

The cases upon this subject are too numerous to cite. Those relied upon by the plaintiffs do not seem to support the proposition they maintain, or else, are no longer the law of their jurisdictions, with a single exception.   We shall not attempt to distinguish these cases except in two instances, which are typical of others.   In *Bowden* v. *Johnson,* 107 U. S. 251, 2 Sup. Ct. 246, and *Stuart* v. *Hayden,* 72 Fed. 402, the transfers of stock in a bank were in prejudice of creditors' rights

since the bank was either in failing circumstances or its solvency so much in doubt that the court concluded it was made with a view to escaping impending liability. The case which supports the plaintiffs' contention and is from the only jurisdiction, so far as our investigation has gone, which maintains this doctrine, is *Chrisman-Sawyer Banking Co.* v. *Independence Wool Mfg. Co.,* 168 Mo. 634, 68 S. W. 1026. Our own decisions have not heretofore specifically been called upon to meet this point. But it is not extending their scope to hold that in principle they have decided that a transfer of stock or of subscription rights accepted by the corporation, and made in good faith will be sustained unless made in prejudice of the rights of existing creditors. *Russell* v. *Bristol,* 49 Conn. 251; *Johnston* v. *Allis,* 71 Conn. 207, 41 Atl. 816.

The last assignment of error, that "the provisions of § 3419, General Statutes, 1918, which was in force in 1907, apply to The Bridgeport and Danbury Electric Railway Company, and to King's liability as a subscriber to its stock, as do also the provisions of § 3435, General Statutes, 1918,"—plaintiffs construe to raise the point of law that King is liable on his stock subscription under the Connecticut statutes. We do not think the error of law as stated in this assignment does raise the error of law which the plaintiffs now argue and desire to have passed upon. Section 3419 provides that "the provisions of this part [the General Corporation Law] shall apply to all corporations organized under any general or special law of this state, except when otherwise expressly stated." The charter of the Bridgeport and Danbury Company does not fall within this exception and hence the provisions of the general corporation law found in this part are applicable to it except so far as its own charter may contain variant provisions, and none such are found

affecting the question of King's liability under his subscription.

It follows that § 3435, that "every stockholder, whether an original subscriber or not, shall be liable for any balance due on the stock held by him," is applicable to an original subscriber. Its language was intended, as we read the other provisions of the part, to apply not only to stockholders as such, but to original subscribers as well, and we think it would not do violence to this language and would accord with the intention of the framers of the original Act of 1901, from which § 3435 came, to construe this language as including all forms of subscribers to stock, that is, as though it read, "whether a subscriber or not." Let us assume that this claim of law is raised by this assignment of error. If, then, this statute does include every stockholder and every subscriber and by its terms continues the liability of an original subscriber for the unpaid balance due on stock transferred by him, it must be equally held to continue the liability of the stockholder who has transferred his stock for the unpaid balance due on the stock transferred by him. This would change the rule which has prevailed in this State at least since the decision in *Hartford & N. H. R. Co. v. Boorman,* 12 Conn. 530, in 1838. It would involve a most radical change in our own law and be a departure from the universal rule recognizing the right of the stockholder and subscriber to transfer his certificate of stock or his subscription rights, and of the corporation to accept such transfer. Moreover, it would, in a business matter of widest interest and most general knowledge, change the accepted business method, and for no useful purpose. A transfer of either a stockholder's stock or a subscriber's rights within the prescribed limitations of an acceptance of the transfer by the corporation, and without prejudice to creditors'

rights, has been proved by the test of time to be a wise rule of property. This position could be strengthened by reference to other sections of our statutes and to analogous decisions in other jurisdictions, but we do not deem it necessary to further support what we conceive to be the plain legislative intention.

There is no error.

In this opinion the other judges concurred.